# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

United States of America,

        Plaintiff,

v.

Jeffrey Charles Rodd,

        Defendant.

**MEMORANDUM OPINION AND ORDER**
Criminal No. 13-230 ADM/JSM

___

Lisa D. Kirkpatrick, Assistant United States Attorney, Minneapolis, MN, on behalf of Plaintiff.

Jeffrey Charles Rodd, pro se.

___

## I. INTRODUCTION

This matter is before the undersigned United States District Judge for a ruling on Defendant Jeffrey Charles Rodd's ("Rodd") Motion for a Reduction of Sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) for Extraordinary and Compelling Reasons [Docket No. 78] (the "Motion"). Rodd requests an immediate release, sentence reduction, or home confinement. For the reasons set forth below Rodd's Motion is denied.

## II. BACKGROUND

On January 15, 2014, a jury found Rodd guilty of Counts 1-4, wire fraud, and Count 5, mail fraud. Jury Verdict [Docket No. 45]. Rodd solicited money from potential investors through promises that he would use the invested funds to purchase and sell "structured settlement annuities." Rodd never made any purchases of the annuities. Instead, he used the money for production of his "Safe Money" radio show expenses or to make Ponzi-type payments to earlier victim-investors. At the sentencing hearing, the Court noted Rodd expressed "some sort of level of remorse, but it seems more like a sort of remorse that you got caught."

Sentencing Hr'g Tr. [Docket No. 72] at 31.  Rodd was reminded that although this case has had "an effect on your health and life, . . . one cannot read the letters and the submissions of the various victims in this case without the realization that it's altered very significantly lots of lives."  Id. at 30.  The trial evidence showed that Rodd "lied over and over and over again."  Id. at 30-31.  Taking into consideration the 18 U.S.C. § 3553(a) factors, Rodd was sentenced to 87 months on Counts 1-5, to be served concurrently, and $1.2 million in restitution.  Am. Sentencing Judgment [Docket No. 62].  The Government requested an upward departure from the Guideline Sentencing range, but the Court concluded that 87 months, the top of the applicable Guideline range, was sufficient to reflect the seriousness of the offense in this case.  Sentencing Hr'g Tr. at 32.

Because Rodd had documented health issues, the Court recommended Rodd be evaluated for incarceration at a Federal Medical Center ("FMC").  Mot. at 2; Sentencing Hr'g Tr. at 37.  In October 2014, Rodd was first incarcerated at a Federal Prison Camp in Duluth, Minnesota.  Mot. at 2.  In January 2015, Rodd was transferred to the FMC in Rochester, Minnesota ("FMC Rochester").  Id. at 2-3.  He was later transferred in 2017 to the FMC in Lexington, Kentucky ("FMC Lexington").  Id.  Rodd currently has a release date of January 10, 2021.

On February 1, 2019, Rodd submitted a request to the warden of FMC Lexington to be considered for compassionate relief pursuant to 18 U.S.C. § 3582.  Rodd did not receive an administrative response within 30 days.  On June 10, 2019, Rodd filed his Motion for a compassionate release, relying on the recently-enacted First Step Act ("FSA").

2

## III. DISCUSSION

### A. Legal Landscape

The First Step Act of 2018 amended 18 U.S.C. § 3582(c)(1)(A). Pub. L. No. 115-391, 132 Stat. 5194, § 603(b). The law under 18 U.S.C. § 3582(c) prohibits modification of a term of imprisonment once it has been imposed, except in limited circumstances. One of those circumstances is "Compassionate Release." The Court:

> may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>     (i) extraordinary and compelling reasons warrant such a reduction; . . .
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.[1]

18 U.S.C. § 3582(c)(1)(A).

The First Step Act amended the statutory scheme by which a Compassionate Release can be presented to the Court. Before passage of the First Step Act, questions of compassionate release came to the Court "upon motion of the Director of the Bureau of Prisons." Now, an inmate defendant may bring his or her own motion if the defendant has exhausted his administrative appeals or, after the warden of the defendant's facility receives the request for compassionate release, the warden does not respond within 30 days. Pub. L. No. 115-391, 132 Stat. 5194, § 603(b).[2]

---

[1] 18 U.S.C. § 3582(c)(1)(A)(ii) does not apply because Rodd, born in 1964, is 55 years old. Rodd would need to be at least 70 years old to qualify for compassionate release consideration under Section (ii).

[2] There is no dispute in this case that this motion is appropriately before the Court. Rodd made a request for consideration under the 18 U.S.C. § 3582. The Warden did not respond within 30 days from the receipt of the request.

Since the passage of the First Step Act, the Sentencing Commission has not yet acted to update their policy statements related to compassionate release.³ Therefore, the Sentencing Guidelines address only the review of a motion by the Director of the BOP, not upon the motion of a defendant. 18 U.S.C.S. Appx. § 1B1.13. The Sentencing Guidelines policy statements and application notes give four examples of "extraordinary and compelling reasons," provided that the defendant is not a danger to the safety of any other person or to the community. The application notes provide:

> Extraordinary and compelling reasons exist under any of the circumstances set forth below:
> (A) Medical Condition of the Defendant.
> (i) The defendant is suffering from a terminal illness ( i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy ( i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (ii) The defendant is—
> (I) suffering from a serious physical or medical condition,
>
> (II) suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

---

³ District courts have noted that the Sentencing Commission cannot amend its Guidelines until it has at least four voting commissioners. United States v. Brown, No. 4:05-CR-00227-1, 2019 U.S. Dist. LEXIS 175424, at *5 n.1 (S.D. Iowa Oct. 8, 2019). Presently, the United States Sentencing Commission has two voting members.

(B) Age of the Defendant. The defendant (i) is at least 65 years old;[4] [and] . . .

(C) Family Circumstances.[5] . . .

(D) As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

Id. at application n.1; see also BOP Program Statement 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g) ("BOP Statement") (January 17, 2019).

Courts disagree over whether Congress intended the First Step Act to expand the definition of "extraordinary and compelling reasons." Some courts continue to follow the pre-First Step Act policy statements of the Sentencing Commission, reasoning that Congress would have amended the content of the law to reflect a more generous standard if it had meant the Sentencing Commission to expand upon the policy. United States v. Lynn, No. 89-0072-WS, 2019 U.S. Dist. LEXIS 135987, at *6-9 (S.D. Ala. Aug. 12, 2019) (concluding that the procedural amendment, by itself, increased the use and transparency of compassionate release). Other courts ruled that the pre-First Step Act policy statements are inapplicable, and that a judge has discretion to determine, at least until the Sentencing Commission acts, what qualifies as "extraordinary and compelling reasons." United States v. Brown, No. 4:05-CR-00227-1, 2019 U.S. Dist. LEXIS 175424, at *10 (S.D. Iowa Oct. 8, 2019).

---

[4] As noted above, Rodd, age 55, does not qualify by his age for consideration for compassionate release.

[5] Rodd does not qualify under Family Circumstances provision. He mentions that he would like to help care for his mother, who is experiencing her own health issues, but he is not her only available caretaker option, nor is she a minor child or a spouse. 18 U.S.C.S. Appx. § 1B1.13, application n.1(C).

5

**B. Adhering to the Sentencing Guidelines Policy Statements**

Rodd has been diagnosed and treated for health issues before and during his incarceration. The Pre-Sentence Report ("PSR") investigation found, between October 2012 and July 2014, that Rodd had been "treated for cellulitis and abscess of his left foot; left heel ulcer debridement; hip replacement; multilevel cervical spondylosis; minimal C3-4 retrolisthesis; peripheral vascular disease; temporomandibular joint disorder; carpal tunnel syndrome, bilateral; congestive heart failure; anemia; hypertension; chronic atrial fibrillation; osteoarthritis; morbid obesity; diabetes mellitus; and possible renal failure." PSR at 10. Rodd argues he has suffered injuries and physical deterioration while incarcerated. He disagrees with treatment decisions made by the Bureau of Prisons Medical Staff. Mot. at 1-6; Opp'n Mem. [Docket No. 83] at 1-16. Although Rodd describes pain and discomfort, none of the issues he has raised are without treatment possibilities. Furthermore, the issues are not nearly as severe as the health crises contemplated by the Sentencing Guidelines. The notes to the Sentencing Guidelines list "metastic solid-tumor cancer, amyotropic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia" as the types of qualifying medical conditions. 18 U.S.C.S. Appx. § 1B1.13, application n.1(A)(i). None of Rodd's self-reported or medically diagnosed ailments approach this level of seriousness.

The notes to the Guidelines also invite evaluation of whether the condition "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." 18 U.S.C.S. Appx. § 1B1.13, application n.1(A)(ii). The most recent medical records submitted with Rodd's Motion are from August 15, 2018. The medical assessment indicates Rodd's medical issues are being

monitored and are under control at the FMC Lexington. Mot., Ex. 1 at 42 (for example, assessing his risk factors for chronic kidney disease, the doctor discussed ongoing control of risk factors, such as diabetes and hypertension, and commented that they already "appear well controlled"). Furthermore, Rodd states in his Motion, "I walk with a cane, however, I can see and I am fully able to take care of myself." Mot. at 5.

**C. Section 3553(a) factors**

Even assuming Congress intended to expand the use of compassionate release with the First Step Act, the Section 3553(a) factors present at sentencing have not changed. Rodd does not qualify for compassionate release.

At sentencing, the Court noted the trial evidence showed Rodd "lied over and over and over again." The Court reminded Rodd that although "this case and its effects have had an effect on your health and life, . . . one cannot read the letters and the submissions of the various victims in this case without the realization that it's altered very significantly lots of lives." Reading Rodd's submissions, including his recent "Movant's Opposition to Government's Response to Defendant's Motion," Opp'n Mem. at 5, he continues to provide excuses for his actions, stating,

> I was in the business of marketing and selling annuities, ira's and the like. People did not say don't put it in your company. They were perfectly fine with a promissory note.

Id. at 6. The evidence at trial showed convincingly that Rodd's clients were not "fine with a promissory note." The jury found Rodd committed the crimes of mail and wire fraud, lying to conceal his wrong-doing. Rodd, through his submission, attempts to shift blame to his victims for not telling him what their money meant to them, stating "No one I sat across from ever said they gave me their life savings or last dollar." Id. at 6. Considering "(1) the nature and circumstances of the offense and the history and characteristics of the defendant . . . ; [and] (2)

the need for the sentence imposed . . . ;" along with the other Section 3553(a) factors, the Court continues to find that a sentence of 87 months is just and fair under the totality of the circumstances. Accordingly, even assuming a more expansive definition of "extraordinary and compelling reasons" under the First Step Act, Rodd's Motion is denied.

## IV.  CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant Jeffrey Charles Rodd's Motion for a Reduction of Sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) for Extraordinary and Compelling Reasons [Docket No. 78] is **DENIED**.

BY THE COURT:

s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  October 31, 2019.